**Affirmed and Opinion filed July 9, 2026.**



**In The**

# Fifteenth Court of Appeals

---

### NO. 15-25-00033-CV

---

### EDITH OKECHUKWU OMIETIMI, Appellant

### V.

### TEXAS BOARD OF NURSING, Appellee

---

**On Appeal from the 419th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-24-003659**

---

### OPINION

This is an appeal from the Texas Board of Nursing's (the Board) final order denying appellant Edith Omietimi's application to renew her Texas Licensed Vocational Nurse (LVN) license. The Board determined that Omietimi did not graduate from an approved vocational nursing education program and thus ordered that she was ineligible to renew her license. The district court upheld the Board's order. We affirm.

# BACKGROUND

The Nursing Practice Act (the Act) grants the Board broad authority to regulate nursing in this state. *See* Tex. Occ. Code §§ 301.001–.657.[1] As part of that authority, the Board may issue licensure by endorsement to qualified applicants. *See id.* § 301.260 (listing application requirements for licensure by endorsement). Licensure by endorsement is the Board's process of issuing a Texas nursing license "without further examination to a nurse from another jurisdiction or licensing authority" after determining "that the applicant meets the same standards as those required of Texas nurses." 22 Tex. Admin. Code § 217.1(12) (Tex. Bd. of Nursing, Definitions).

In February 2021, Omietimi obtained a Florida nursing license from the Florida Board of Nursing (FBON). The following month, she submitted an application for licensure by endorsement to the Board. Her application stated that she graduated from Sacred Heart International Institute, Inc. (Sacred Heart), a nursing education program located in Florida and approved by the FBON for on-campus instruction. The Board issued her a Texas LVN license and she began practicing in this state.

In early 2023, the Federal Bureau of Investigation announced "Operation Nightingale," identifying over 7,500 individuals nationwide as participants in a fraudulent nursing diploma scheme. As part of that scheme, private recruiters offered aspiring nurses instructions to pass the National Council Licensure Examination (NCLEX), and Florida nursing programs issued the students false diplomas and transcripts to obtain nursing licenses. The FBI identified Omietimi as

---

[1] Unless otherwise noted, all references to the Act and the Board's related administrative rules are to the versions as they existed during the relevant time frame and which the parties acknowledge govern this dispute.

potentially involved in Operation Nightingale.

Later that year, Omietimi applied to renew her Texas LVN license. Board staff, having learned of Omietimi's alleged involvement in Operation Nightingale, reassessed her licensure eligibility. Staff found that Omietimi had never attended Sacred Heart; instead, she had attended a nursing education program located in Houston, Texas, registered in Texas as "Jean's NCLEX Review LLC." The Board had not approved Jean's NCLEX Review to operate a nursing education program in Texas. Staff notified Omietimi that the Board proposed to deny her renewal application because she had not "successfully completed" an approved program. *See* Tex. Occ. Code § 301.252(a)(2) (requiring all licensure applicants to have "successfully completed" an approved program of professional or vocational nursing education).

Staff also filed formal charges against Omietimi with the State Office of Administrative Hearings (SOAH) seeking to deny her renewal application or revoke her license. The charges included three allegations: (i) using a fraudulently procured nursing license or diploma, *see* Tex. Occ. Code § 301.452(b)(2), (5);[2] (ii) failing to graduate from an approved educational program, *see* 22 Tex. Admin. Code § 217.5(a)(1) (requiring applicants for licensure by endorsement to "graduat[e] from

_____

[2] Section 301.452(b) provides grounds for disciplinary action. *See* Tex. Occ. Code § 301.452(b). If the Board determines that a person has committed an act listed in Section 301.452(b), the Board "shall" enter a disciplinary order imposing, among other options, "denial of the person's application for a license, license renewal, or temporary permit." *Id.* § 301.453(a)(1). Upon such a finding, the Board may suspend or revoke a license or deny licensure renewal. *Id.* Here, Staff alleged violations of (b)(1), (2), (5), and (10). *See id.* §§ 301.452(b)(1) (authorizing disciplinary action for "a violation of this chapter, a rule or regulation not inconsistent with this chapter, or an order issued under this chapter"), (2) (authorizing disciplinary action for "fraud or deceit in procuring or attempting to procure a license"), (5) (authorizing disciplinary action for "use of a nursing license, diploma, or permit . . . that has been fraudulently purchased, issued, counterfeited, or materially altered"), & (10) (authorizing disciplinary action for "unprofessional conduct in the practice of nursing that is likely to deceive, defraud, or injure a patient or the public").

3

an approved nursing education program"); and (iii) failing to graduate from a program with "substantially equivalent" education standards to a Texas approved nursing program, *see id.*[3]

An Administrative Law Judge (ALJ) held an evidentiary hearing on the charges. After the hearing, the ALJ issued a proposal for decision (PFD) concluding that disciplinary action under Sections 301.452(b)(2) and (b)(5) was unwarranted. The ALJ did not expressly analyze Sections 301.452(b)(1) or (b)(10). The ALJ also concluded that Omietimi did not graduate from an "approved program." 22 Tex. Admin. Code § 217.5(a)(1). Thus, she recommended that the Board deny Omietimi's renewal application. The Board adopted the ALJ's findings and conclusions without modification and denied Omietimi's renewal application.[4] In response, Omietimi filed a motion for rehearing, which was overruled by operation of law. *See id.* § 213.23(h) (Tex. Bd. of Nursing, Decision of the Board) (providing that motions for rehearing are controlled by Texas Government Code Chapter 2001). Omietimi then sought judicial review of the Board's order. *See* Tex. Occ. Code § 301.555(a) (authorizing judicial review of order denying licensure renewal). The

---

[3] Although both the ALJ and the parties analyzed "substantial equivalence" under the current version of Rule 217.5(a)(1), we conclude that the "substantial equivalence" prong is inapplicable here. Instead, we refer to the version of Rule 217.5(a)(1) that was in effect in 2021, when Omietimi initially obtained her license. *See* Tex. Occ. Code § 301.260(a)(2) (stating that applicant may qualify for licensure by endorsement by submitting "evidence that the person possessed, *at the time of initial licensing as a nurse*, the other qualifications necessary *at that time* to have been eligible for licensing in this state") (emphasis added). At that time, Rule 217.5(a)(1) required only that an applicant for licensure by endorsement must have graduated from an "approved Texas nursing education program." 22 Tex. Admin. Code § 217.5(a)(1). Subsequently, the Board amended the Rule to include graduation from a "program with substantially equivalent education standards" to an approved program. *See* 47 Tex. Reg. 6515, 6581–83 (Oct. 7, 2022).

[4] The Act states that the Board "may not change a finding of fact or conclusion of law or vacate or modify an order of the administrative law judge." Tex. Occ. Code § 301.459(a-1). However, the Board "has the sole authority and discretion to determine the appropriate action or sanction." *Id.*

4

district court affirmed the order.  This appeal followed.

## STANDARD OF REVIEW

We review the Board's order under the substantial evidence standard of review.  *See* Tex. Gov't Code § 2001.174 (directing courts to review final decisions in contested-case hearings under the substantial evidence standard "if the law does not define the scope of judicial review"); *cf. Walkington v. Tex. Bd. of Nursing*, No. 03-22-00658-CV, 2023 WL 6299113, at *2 (Tex. App.—Austin Sep. 28, 2023, no pet.) (mem. op.) (reviewing Board's order in disciplinary proceeding under substantial evidence standard).  Under the substantial evidence standard, a reviewing court shall reverse or remand a case for further proceedings if the appellant's "substantial rights" have been prejudiced "because the administrative findings, inferences, conclusions, or decisions" are

(A)  in violation of a constitutional or statutory provision;

(B)  in excess of the agency's statutory authority;

(C)  made through unlawful procedure;

(D)  affected by other error of law;

(E)  not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F)  arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174.  An agency's findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise.  *Tex. Comm'n on Env't Quality v. Maverick Cnty.*, 642 S.W.3d 537, 547 (Tex. 2022).  An agency's decision may be deemed arbitrary or an abuse of discretion "if it fails to consider a mandatory factor, considers an irrelevant factor, considers appropriate factors but reaches a completely unreasonable result, or fails to follow its own regulations."  *Save Our Springs All.,*

5

*Inc. v. Tex. Comm'n on Env't Quality*, 713 S.W.3d 308, 320 (Tex. 2025).

## ANALYSIS

Omietimi challenges the Board's order on five grounds. First, she argues the ALJ erroneously assigned her the burden to prove her qualifications to hold a Texas LVN license. Second, she argues the Board erroneously determined that she failed to graduate from an approved program. Third, she argues the Board had a ministerial duty to renew her license. Fourth, she argues the Board abused its discretion by denying her renewal application without expressly finding a violation under Section 301.452(b). Fifth, she argues the Board violated her due-course-of-law rights under the Texas Constitution. We address these arguments in turn.

### I.     The ALJ did not err in assigning Omietimi the burden to prove she was qualified to hold a Texas LVN license.

Omietimi argues that the ALJ erred in assigning her the burden to prove she was qualified to hold a Texas LVN license. The ALJ concluded:

> To determine whether denial of the Renewal is warranted, Staff had the burden of identifying the legal standards alleged to apply and to produce evidence that they were not met, and Respondent had the ultimate burden of persuasion to show her qualifications for the privilege of continuing nursing practice in this state.

We find no error in the ALJ's determination.

The pertinent SOAH rule provides that "[i]n determining which party bears the burden of proof,[5] the [ALJ] shall first consider the applicable statute, the referring agency's rules, and the referring agency's policy in accordance with

---

[5] Here we use "burden of proof" interchangeably with "burden of persuasion." *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 100 n.4 (2011) (using "burden of proof" interchangeably with "burden of persuasion" to identify party who must persuade factfinder in its favor to prevail).

[Section] 155.419 of this chapter." 1 Tex. Admin. Code § 155.427 (State Off. of Admin. Hearings, Burden of Proof).[6] Here, the Act is silent on who bears the burden of proof in a contested-case hearing involving an eligibility matter.[7] Turning to the Board's rules, Rule 213.3 states that in an eligibility matter "[t]he [applicant] shall have the burden of initiating the action, going forward with the administrative proceeding and proving the allegations contained in the pleading." *See* 22 Tex. Admin. Code § 213.3(b)(2) (Tex. Bd. of Nursing, Pleading). But the Board may, at its discretion, "initiate proceedings before SOAH without relieving petitioner of the burden of proof as outlined herein." *Id.* That provision applies here.

This case arose when Omietimi "request[ed] . . . [r]enewal." *See id.* § 213.1(16) (defining "eligibility matter" as a "proceeding by which an individual requests . . . [r]enewal"). Thereafter, the Board initiated a contested-case hearing seeking to deny Omietimi's renewal application. The ALJ characterized the hearing as involving both a disciplinary action *and* a license-eligibility determination. Under these circumstances, the ALJ did not abuse her discretion in assigning Omietimi the burden to prove her eligibility to hold a Texas LVN license. Accordingly, we overrule Omietimi's first issue.

## II. Substantial evidence supports the Board's determination that Omietimi failed to graduate from an approved program.

Omietimi argues that the Board erred in concluding that she failed to graduate

---

[6] The Rule lists additional factors that the ALJ "may" consider, including (1) the status of the parties; (2) the parties' relative access to and control over information pertinent to the merits of the case; (3) the party seeking affirmative relief; (4) the party seeking to change the status quo; and (5) whether a party would be required to prove a negative. 1 Tex. Admin. Code § 155.427.

[7] An "eligibility matter" is "[a] proceeding by which an individual requests licensure (such as by Petition for Declaratory Order, Application for Examination, Application for Endorsement), Reinstatement, Reissuance, or Renewal." 22 Tex. Admin. Code § 213.1(16) (Tex. Bd. of Nursing, Definitions).

7

from an approved program.  She contends that when the Board issued her a license, it also certified her as a graduate of Sacred Heart, a program approved by the FBON. Alternatively, she argues the Board waived the right to deny her renewal application.[8]

To qualify for licensure by endorsement, an applicant must have "successfully completed a program of professional or vocational nursing education approved under Section 301.157(d)" of the Act.  Tex. Occ. Code § 301.252(a)(2); *see also* 22 Tex. Admin. Code § 217.5(a)(1).  The Board may not certify a person "as a graduate of any school of nursing or educational program unless the person has completed the requirements" of an approved program's prescribed course of study.  Tex. Occ. Code § 301.157(d).  In granting licensure by endorsement, the Board thus makes two determinations.  First, it "recognize[s] and accept[s]" an applicant's program "as approved." *See id.* § 301.157(d-4) (stating that "[t]he [B]oard may recognize and accept as approved . . . [an] educational program operated in another state and approved by a state board of nursing or other regulatory body of that state").  Second, it certifies the applicant as having "successfully completed" that program.  *Id.* § 301.252(a)(2).

Here, Omietimi argues that when the Board issued her license, it must have (1) "recognize[d] and accept[ed]" Sacred Heart "as approved," *id.* § 301.157(d-4),

---

[8] Omietimi also makes estoppel arguments, but those arguments are waived as a basis for error because Omietimi did not raise them in her motion for rehearing before the Board. *See Hyde v. Harrison Cnty.*, 710 S.W.3d 403, 411 (Tex. App.—15th Dist. 2025, no pet.) (holding that county failed to preserve error on complaint that was not raised as legal basis in motion for rehearing); *see also* Tex. Gov't Code § 2001.146(g) (requiring motion for rehearing to "state the legal and factual basis for the claimed error").  Omietimi did not preserve her estoppel argument by arguing waiver, as those are separate legal bases. *See Ulico Cas. Co v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) ("[T]he doctrines of waiver and estoppel are frequently referenced together, but they are different."); *LaLonde v. Gosnell*, 593 S.W.3d 212, 219 (Tex. 2019) ("Under Texas law, implied waiver and prejudice are distinct concepts.").

and (2) certified her as having "successfully completed" that program, *id.* § 301.252(a)(2). She argues the Board cannot now dispute that certification. We disagree.

Consistent with its express authority, the Board has adopted several renewal requirements. *See id.* § 301.301(b) ("A person may renew an unexpired license issued under this chapter on payment to the [B]oard of the required renewal fee before the expiration date of the license and compliance with any other renewal requirements adopted by the [B]oard."). One of those requirements—"fitness to practice"— is determined by evaluating an "individual's ability to *consistently comply* with the requirements of the [Act], the Board's rules and regulations, and generally accepted standards of nursing practice." *See* 22 Tex. Admin. Code § 213.29(b)–(c) (emphasis added) (Tex. Bd. of Nursing, Fitness to Practice). Accordingly, the renewal process aims to ensure that the Board's "decision to grant or refuse a license will be based on current information and assurances," as is the case with other boards that issue licenses. *Cf. Harris Cnty. Bail Bond Bd. v. Blackwood*, 41 S.W.3d 123, 128 (Tex. 2001) (explaining that the Bail Bond Act's mandate that renewal applicants meet the same requirements as original applicants helps keep information "regularly updated"). The Board's authority to deny renewal for lack of fitness to practice, like its authority to revoke a license on disciplinary grounds, "necessarily contemplates its continued authority to impose licensure requirements after the issuance of licenses." *Cf. Tex. Ass'n of Psych. Assocs. v. Tex. State Bd. of Exam'rs of Psychs.*, 439 S.W.3d 597, 605 (Tex. App.—Austin 2014, no pet.) (citing *Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008)).

Here, the Board exercised its continued authority to impose licensure requirements and determined that Omietimi failed to qualify for renewal. The Board found Omietimi ineligible to renew her license because she graduated from Jean's

9

NCLEX Review, an unapproved Texas program unaffiliated with Sacred Heart. Substantial evidence supports the Board's finding. First, Omietimi testified that she took classes exclusively in Houston and never traveled to Florida. The ALJ found it to be "starkly obvious" that the Houston program Omietimi attended was not Sacred Heart. Further, Jean's NCLEX Review was not affiliated with Sacred Heart because the Board never approved Sacred Heart to operate a satellite or extension site in Texas. Lastly, the ALJ found that Jean's NCLEX Review was not approved under Section 301.157(d). Because Omietimi did not "successfully complet[e]" an approved program, the Board did not err in finding that she was ineligible to hold a Texas LVN license. *See* Tex. Occ. Code § 301.252(a)(2).

Moreover, the Board did not waive the right to deny Omietimi's renewal application by originally certifying her as a graduate of Sacred Heart. Until the FBI announced Operation Nightingale, the Board was justifiably unaware that Omietimi never attended Sacred Heart. After Operation Nightingale became public, the Board diligently began evaluating Omietimi's licensure eligibility. Thus, the Board's original certification was not "unequivocally inconsistent" with denying Omietimi's subsequent renewal application based on newly uncovered facts. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017) ("While waiver may sometimes be established by conduct, that conduct must be unequivocally inconsistent with claiming a known right.").

As a result, substantial evidence supports the Board's conclusion that Omietimi did not graduate from an approved program, and, therefore, that she does not meet the minimum requirements to hold a Texas LVN license. We overrule Omietimi's second issue.

10

**III.    The Board did not have a ministerial duty to renew Omietimi's license.**

Omietimi contends that the Board had a ministerial duty to renew her license because she allegedly complied with the Act's renewal requirements. We disagree. By its terms, the Act provides the Board with discretion in choosing whether to renew an applicant's license. It states that "[a] person *may* renew an unexpired license . . . on payment to the [B]oard of the required renewal fee . . . and *compliance with any other renewal requirements* adopted by the [B]oard." Tex. Occ. Code § 301.301(b) (emphasis added). One of these renewal requirements is "fitness to practice." *See* 22 Tex. Admin. Code § 213.29. The Board's authority to condition renewal on various requirements shows that renewal is discretionary, not ministerial. The case Omietimi relies upon is inapposite because there the statute contained language making renewal mandatory. *See Tex. State Bd. of Med. Exam'rs v. Mann*, 413 S.W.2d 382, 385 (Tex. 1967) (concluding that provision stating medical board "shall" renew license upon practitioner's payment of renewal fee created "ministerial duty" to renew). No such language exists here. Thus, we overrule Omietimi's third issue.

**IV.    The Board was authorized to deny Omietimi's renewal application even though it never expressly found a Section 301.452(b) violation.**

Omietimi argues that the Board lacked authority to deny her renewal application because neither the PFD nor the Board's final order "specifically [found]" or "otherwise mention[ed]" that she committed a disciplinary violation under Section 301.452(b). Omietimi argues the Board lacked *disciplinary* authority by not expressly finding a disciplinary violation; but she does not challenge the Board's *independent* authority to deny renewal as an eligibility matter. Without deciding whether disciplinary authority existed under Sections 301.452(b), we uphold the Board's order because substantial evidence supports the Board's

11

conclusion that Omietimi was ineligible to renew her license under Board Rule 213.29. *See* Tex. Occ. Code § 301.301(b); 22 Tex. Admin. Code § 213.29.

Here, the contested-case hearing involved both a disciplinary action and a licensure-eligibility determination. On the former basis, the Board sought to revoke Omietimi's license for violations of Sections 301.452(b)(1), (2), (5), and (10). *See* Tex. Occ. Code §§ 301.452(b), .453(a)(1). On the latter basis, it sought to deny Omietimi's renewal application because she never graduated from an approved program. *See id.* § 301.252(a)(2); 22 Tex. Admin. Code § 217.5(a)(1). The Board's formal charges also cited to Rules 213.27–.33, including Rule 213.29's "fitness to practice" renewal requirement. 22 Tex. Admin. Code § 213.29.

Because the Board never expressly stated that she "committed an act listed in Section 301.452(b)," Omietimi argues the Board lacked authority to deny her renewal application. *See* Tex. Occ. Code § 301.453(a)(1) (requiring the Board to impose a disciplinary order if it "determines that a person has committed an act listed in Section 301.452(b)"). She contends that the Board did not have "independent authority" to deny her application absent such a finding. While acknowledging its omission, the Board argues that its final order "demonstrates" that Section 301.452(b)(1) applies here. *See id.* § 301.452(b)(1) (authorizing disciplinary action for "a violation of [the Act], a rule or regulation not inconsistent with [the Act], or an order issued under [the Act]").

We need not decide whether disciplinary authority existed under Sections 301.452(b) and 301.453(a)(1). Instead, we uphold the final order because the Board was authorized to deny Omietimi's renewal application if it determined Omietimi was unable to "consistently comply" with the Act or the Board's rules. *See* 22 Tex. Admin. Code § 213.29(b)–(c) (emphasis added) (authorizing denial of license renewal application if an individual cannot "consistently comply" with the Act's

12

requirements or the Board's rules and regulations).  Although the Board never expressly articulated this legal basis, the Board's authority to deny renewal on the basis of ineligibility is undisputed.  As such, Rule 213.29 remains a valid legal basis on which to uphold the Board's order.  *See Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984) ("A reviewing court is not bound by the reasons given by an agency in its order, provided there is a valid basis for the action taken by the agency.").  Thus, we overrule Omietimi's fourth issue.

## V.     The Board's denial did not violate Omietimi's due-course-of-law rights under the Texas Constitution.

Omietimi argues that the Board's denial of her renewal application violated her due-course-of-law rights under the Texas Constitution.  The Texas Constitution guarantees that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land."  Tex. Const. art. I, § 19.  Assuming without deciding that Omietimi possessed a protected property or liberty interest, her claim still fails.

Substantively, the requirement that nurses graduate from an approved educational program is rationally related to the State's legitimate interest in protecting public health and safety, which Omietimi concedes.  However, she contends that the requirement is "unreasonably oppressive" as applied to her because she will have to reenroll at an approved program despite having practiced for almost three years without any documented complaints. *See Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 88–90 (Tex. 2025) (holding that 750-hour training requirement to obtain esthetician license was unreasonably oppressive as applied to eyebrow threaders, primarily because forty percent of those hours were unrelated to State's interest in protecting health and safety).

Unlike the eyebrow threaders in *Patel*, Omietimi has not shown that the Act's

13

approved-education requirement is unreasonably oppressive as applied to her. The ALJ concluded that Jean's NCLEX Review failed to meet multiple Board approval standards, including pretesting, curriculum, instructional scope, teaching aids, faculty qualifications, number of instructors, instructor-student ratios, and student evaluations. *See* 22 Tex. Admin. Code §§ 214.7 (Tex. Bd. of Nursing, Faculty), .8 (Students), .9 (Program of Study), .11 (Facilities, Resources, and Services). Omietimi did not challenge those conclusions. Moreover, Omietimi has already reenrolled in a different nursing program and expects to graduate in 2026 with a bachelor's degree in nursing. Thus, requiring Omietimi to complete an approved program before she may practice nursing in this state is not unreasonably oppressive.

Procedurally, this case bears no resemblance to the case on which Omietimi relies. *See Mosley v. Tex. Health and Hum. Servs. Comm'n*, 593 S.W.3d 250, 263 (Tex. 2019) (holding that Health and Human Services Commission violated the due-course-of-law guarantee by mailing litigant an order expressly misrepresenting the prerequisites for judicial review). Here, Omietimi received sufficient procedural due process, including notice, an administrative hearing, and judicial review. *See* Tex. Occ. Code §§ 301.454 (providing for notice and a hearing), .555(a) (providing for judicial review of an adverse order). Accordingly, the Board's denial of Omietimi's renewal application did not violate her due-course-of-law rights. We overrule Omietimi's fifth issue.[9]

---

[9] In her final issue, Omietimi contends that the Board erred by refusing to permit her to establish eligibility through evidence of her post-licensure clinical practice. Because she did not raise this argument in her motion for rehearing before the Board, it is waived. *See Hyde*, 710 S.W.3d at 411; Tex. Gov't Code § 2001.146(g).

## CONCLUSION

Substantial evidence supports the Board's conclusion that Omietimi did not graduate from an approved nursing education program.  Because she did not meet the minimum qualifications to hold a Texas LVN license, the Board was authorized to deny her renewal application.  Accordingly, we affirm the district court's judgment.

/s/ Scott K. Field
Scott K. Field
Justice

Before Chief Justice Brister and Justices Field and Rose.*

*Before Chief Justice Jeff Rose (Retired), Third Court of Appeals, sitting by assignment.  *See* Tex. Gov't Code § 74.003(b).